

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 29, 1947

Honorable S. J. Isaacks, Chairman
Judiciary Committee
House of Representatives
Austin, Texas

Opinion No. V- 228

Re: Constitutionality
of House Bill No.
739.

Dear Sir:

Your statement and request for an opinion is in part as follows:

"The Judiciary Committee of the House of Representatives has instructed me, as Chairman of the Committee, to request from you a ruling as to the constitutionality of House Bill No. 739, and particularly in its relation to Article I, Section 21 of the Texas Constitution."

This bill prevents the acquisition of any property by one who wilfully and unlawfully takes or procures to be taken the life of another, as the result of such death. It changes the laws of descent and distribution and the vesting of estates to accomplish this purpose.

Article 3314 of Vernon's Civil Statutes reads as follows:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject

however, to the payment of the debts of the
testator or intestate, except such as may be
exempted by law; and, whenever a person dies
intestate, all of his estate shall vest im-
mediately in his heirs at law, but with the
exceptions aforesaid shall still be liable
and subject in their hands to the payment of
the debts of the intestate; but upon the is-
suance of letters testamentary or of adminis-
tration upon any such estate, the executor or
administrator shall have the right to the pos-
session of the estate as it existed at the
death of the testator or intestate, with the
exceptions aforesaid; and he shall recover
possession of and hold such estate in trust
to be disposed of in accordance with law."

House Bill No. 739 will change the above quoted
statute, insofar as the vesting of an estate where a slay-
er, having an interest in the estate of the deceased, is
concerned.

Article I, Section 21 of the Texas Constitution,
reads as follows:

"No conviction shall work corruption
of blood, or forfeiture of estate, and the
estates of those who destroy their own lives
shall descend or vest as in case of natural
death."

To better understand our problem, let us first
look to the definition of corruption of blood and forfeit-
ure of estate. Volume 9 of Words and Phrases, at page
778, provides the following definition:

"'Corruption of blood' was an incident
on an attainder for treason or felony. The
doctrine of corruption of blood was of feu-
dal origin, introduced after the Norman Con-
quest. The blood of the attainted person was
deemed to be corrupt, so that neither could
he transmit his estate to his heirs, nor
could they take by descent from the ances-
tor. The crime of the attainted felon was
deemed a breach of the implied condition in
the donation of the feud 'dum bene seges-
serit,' and, the descent to his heirs being
interrupted by the corruption of blood, his

lands escheated to the lord. But this es-
cheat was subordinate to the prior and supe-
rior law of forfeiture. Avery v. Everett,
18 N. E. 148, 150, 110 N. Y. 317, 1 L. R. A.
264, 6 Am. St. Rep. 368."

We already have a statute in this State wherein
the beneficiary of a life insurance policy forfeits his
rights to the proceeds by wilfully bringing about the death
of the insured. (Art. 5047, V. C. S.). The constitution-
ality of this statute has not been raised in our Courts,
however.

Other States have passed statutes wherein any
person convicted of killing another shall not inherit any
property from the deceased by their wrongful act, and the
constitutionality of these statutes have been attacked on
substantially the same grounds as provided in Article I,
Section 21 of our Constitution. Those states have consti-
tutional provisions similar to our own regarding corrup-
tion of blood and forfeiture of estates. The Supreme
Court of Kansas in the case of Hamblin vs. Edna Marchant,
175 Pac. 678, passing on such a statute said:

"The constitutionality of the statute is
questioned. It is argued that it violates § §
10 and 12 of the Bill of Rights, and § 6 of
Article 6, of the State Constitution, and that
it also violates the 14th Amendment of the Con-
stitution of the United States. It is argued
that the statute is penal and works a forfeit-
ure. So far as the present action is concern-
ed, the statute changed the law of the devolu-
tion of property, on the death of the owner.
The legislature has entire control of that mat-
ter. The Law of Descents and Distribution pres-
cribes the way in which property shall go on the
death of the owner, and the statute in question
is merely an exception to the general rules pres-
cribed by the Statute of Descents and Distribu-
tions. The statute in question is a part of the
Law of Descents and Distibutions, and it pro-
vides that the property of a deceased owner
shall not go to the person who took the owner's
life. Whether the person to whom the property
would ordinarily go took the owner's life is a
question that must be judicially determined by
a court of competent jurisdiction. The legisla-
ture has seen fit to say that that fact must be

ascertained in a criminal prosecution in which the person who would take the property is charged with killing the owner. When that fact is ascertained, the property is not then taken from the person who would inherit, but it is then determined that the person never did inherit, and never did acquire any interest in the property. The statute is not penal; it does not add anything to the punishment of the person convicted; neither does it provide for a forfeiture; and nothing is taken from the person convicted. Edna Marchant never acquired nor received anything that could be taken from her. It follows that neither of the constitutional provisions mentioned has been violated by the statute. The conclusion reached is supported by Perry vs. Strawbridge, 209 Mo. 621, 16 L. R. A. (N. S.) 244, 123 Am. St. Rep. 510, 108 S. W. 641, 14 Ann. Cas. 92."

In the case of Perry vs. Strawbridge, 108 S. W. 641, 209 Mo. 621, it was held that the construction of a statute giving a widower one half the property of his childless wife, as not applying to one who murders his wife, is not prevented by such a constitutional provision. The Court said:

"This construction of the existing statute, or even an express statute, as they have in Iowa, prohibiting a murderer from inheriting from his victim, does not violate our constitutional provision. There is no forfeiture of an estate which he has, but it is simply preventing him from acquiring property in an unauthorized and unlawful way, i.e., by murder. It takes nothing from him, but simply says: 'You cannot acquire property in this way.' Nor does such a statute prevent his heirs from inheriting through him property rightfully his, at the time of his demise. The state cannot by law take a criminal's property, but it can say to every individual citizen: 'You cannot acquire property by designated unlawful means.' Such statutes violate no constitutional provisions either state or Federal."

The annotations in 6 A. L. R. 1408 on the constitutionality of such statutes reads in part as follows:

"This situation has led to the adoption in various states of statutes of the type involved in the reported case (Hamblin v. Marchant, ante 1403), providing that anyone convicted of killing a person from whom he would have inherited shall forfeit such inheritable interest. To these statutes two objections have been made on constitutional grounds: First, that they constitute an impairment of a vested right, and, second, that they contravene constitutional provisions that no conviction shall work a forfeiture of estate. Since there cannot be a forfeiture of estate unless some vested right is interfered with (see cases set forth, infra), both objections involve substantially the same inquiry into the nature of the right which the statute operates to limit.

"Notwithstanding the suggestion thrown out arguendo in several cases in support of the view that no exception can be made in the case of murderers, to the ordinary operation of the Statutes of Descent and Distribution, that a contrary conclusion would be at variance with the constitutional provision that no conviction shall work a forfeiture of estate, the courts which have had occasion directly to consider the question have held otherwise." (Emphasis ours).

The only Texas cases we have found touching on this subject are Davis vs. Laning, 19 S. W. 846, Murchison vs. Murchison, 203 S. W. 423, and American National Insurance Company vs. Coates, 246 S. W. 356. The Davis vs. Laning case by the Supreme Court of Texas held that a convict may either inherit himself or transmit inheritance. The Murchison case held that although a wife who feloniously killed her husband could not collect the proceeds of an insurance policy under the terms of such policy, she was entitled to the money as surviving wife of the deceased when the Insurance Company paid the money to the husband's estate. The American National Insurance Company vs. Coates case held the heirs of the slayer were entitled to the proceeds of an insurance policy on the life of the deceased.

All of the Texas cases cited were decided on the theory of the laws of descent and distribution and we have found no case in point as to a construction of Article I,

Section 21 of the Constitution from the view of a slayer inheriting property from his wrongful act of killing the deceased. We must, therefore, accept the construction placed on such statutes by Courts of other jurisdictions.

From the authorities cited, we conclude that the Legislature can pass a constitutional act to prevent one who wilfully and unlawfully takes or procures to be taken the life of another, from acquiring property by reason of such death.

Your question is therefore answered that House Bill No. 739 does not violate Article I, Section 21 of the Constitution.

We call your attention to the caption of the bill and suggest you delete the words "killed another" and add after the word "unlawfully" the following: "taken or procured to be taken the life of another." This would be in conformity with the body of the Act.

## SUMMARY

House Bill No. 739, which prevents the acquisition of any property by one who wilfully and unlawfully takes or procures to be taken the life of another, as the result of such death, is not violative of Article I, Section 21 of the Texas Constitution, as prior to such death there is no vested interest but only an inheritable interest and there is actually no forfeiture of an estate. (6 A. L. R. 1408).

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Robert A. Hall_

Robert A. Hall
Assistant

RAH/JMc

APPROVED:

_Price Daniel_
ATTORNEY GENERAL